

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

---

*Osmar J. Benvenuto*
*Assistant United States Attorney*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*

*Direct Dial: (973)645-2869*
*Facsimile: (973) 645-3497*

February 6, 2015

**VIA ELECTRONIC MAIL**

The Honorable Kevin McNulty
United States District Judge
Frank R. Lautenberg Post Office
and United States Courthouse
Federal Square
Newark, New Jersey 07102

> RE:  United States v. Claude Williams,
> Crim. No. 13-00548 (KM)

Dear Judge McNulty:

Please accept this letter in lieu of a more formal motion *in limine* regarding the admissibility of certain evidence that the Government intends to offer, or may offer, during trial in the above-captioned matter.

Specifically, the Government seeks to introduce: (1) records pursuant to Rules 803(6), 803(8), 902(1), and 902(11) of the Federal Rules of Evidence; (2) records and evidence to which no objection has been made under paragraphs 7 and 8 of this Court's Order for Discovery and Inspection, dated September 4, 2013 (hereinafter, the "Discovery Order"); and (3) the prior convictions of defendant Claude Williams should he decide to testify. The Government also requests, pursuant to Rule 12.1(e) of the Federal Rules of Criminal Procedure, that the Court preclude any undisclosed alibi witnesses.

In order to proceed as efficiently as possible at trial and conserve both the jury's and the Court's time, the Government has asked the defense whether it is willing to enter into stipulations with respect to certain foundational and undisputed issues, such as the authenticity of phone and business records, the federally-insured status of the banks that were robbed, the monetary losses suffered by those banks, and the accuracy of the date and time markers on bank surveillance videos and photographs. The defense has advised the Government that it will not enter into any such stipulations.

As a result, it will be necessary for the Government to call some of these foundational witnesses. Nevertheless, in an effort to streamline the Government's case, the Government respectfully requests a brief Rule 104 hearing to address the admissibility of certain records pursuant to the Federal Rules of Evidence and this Court's Discovery Order.

The Court's prerogative to make preliminary determinations regarding the application of the Federal Rules of Evidence is set forth in Rule 104. Rule 104 provides in pertinent part:

> (a) In General. The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.

> (b) Relevance That Depends on a Fact. When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later.

Fed. R. Evid. 104(a) and (b). This rule applies to all preliminary determinations, including authenticity, and the question of whether documents fall within the business records exception to the hearsay rule. *See In re Japanese Elec. Products Antitrust Litig.*, 723 F.2d 238, 287-88 (3d Cir. 1983) (holding that the determination is made by the judge rather than jury, and that the court is not confined to admissible evidence), *rev'd on other grounds, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

## I.  Admission of Documents Pursuant to Rule 902

The Government intends to offer at trial documents that are self-authenticating pursuant to Rule 902 of the Federal Rules of Evidence. The preamble of Rule 902, which is entitled "Self-Authentication," states: "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following." This means, as the Seventh Circuit has explained, "that the document is admissible in evidence without any need for a witness to testify that it is authentic, that is, that it is what it purports to be (an official document stating what it is)." *United States v. Hampton*, 464 F.3d 687, 689 (7th Cir. 2006).

These "self-authenticating" documents under Rule 902 include "domestic public documents under seal," *see* Rule 902(1), and "certified domestic records of regularly conducted activity, *see* Rule 902(11). These types of records are also admissible under established exceptions to the hearsay rule. *See* Rule 803(6) ("Records of regularly conducted activity."); Rule 803(8) ("Public records and reports.").

The Government intends to offer at trial call detail records, including historical cell-site records, obtained from Sprint, Verizon Wireless, and AT&T. Each of these companies has submitted a written declaration, pursuant to Rule 902(11), certifying that their corresponding records were "made at or near the time of the occurrence set forth" by a "person with knowledge of those matters," were "kept in the course of the regularly conducted activity," and "made by the regularly conducted activity as a regular practice." An example of one of these certifications is attached hereto as Exhibit A. Consistent with Rule 902(11), the Government has provided the defense with "written notice" of its intention to offer such records into evidence and it has given the defense a copy of the records and the written declaration.[1]

In addition, the Government intends to offer at trial certificates obtained from the Federal Deposit Insurance Corporation ("FDIC") and records obtained from the New Jersey Department of Motor Vehicles ("DMV"). Each of these records bears an official "seal" and "a signature purporting to be an attestation or execution." *See Hampton*, 464 F.3d at 690 (noting that FDIC certificates are self-authenticating); *United States v. Hamilton*, 838 F.2d 1210, 1210 (4th Cir. 1988) (holding that "certified copes of . . . DMV records" are "self-authenticating"); *see also Fed. R. Evid.* 902(1) ("A document bearing a seal purporting to be that of the United States, or of any State . . . or of a political

---

[1] Rule 902(11) certificates do not present an issue under the Confrontation Clause, even assuming that the Confrontation Clause applies to Rule 104 hearings on admissibility. *See, e.g., United States v. Yeley-Davis*, 632 F.3d 673, 680-81 (10th Cir. 2011) (certification of authenticity of business records was not testimonial because it was designed "merely to authenticate the cell phone records—and not to establish or prove some fact at trial"), *cert. denied*, 131 S. Ct. 2172 (2011); *United States v. Adefehinti*, 510 F.3d 319, 327-28 (D.C. Cir. 2008); *United States v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006) (holding that a Rule 902(11) certification was not testimonial, noting that the court did not find as controlling the fact that a certification of authenticity under 902(11) is made in anticipation of litigation. What is compelling is that *Crawford* expressly identified business records as nontestimonial evidence"); *see also United States v. Morgan*, 505 F.3d 332 (5th Cir. 2007) (per curiam) (holding that "*Crawford* does not apply to the foundational evidence authenticating business records in preliminary determinations of the admissibility of evidence").

subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.").

Accordingly, the Government respectfully requests a Rule 104 hearing to determine the admissibility of these records and to permit the Court, if it wishes, to inspect the documents and written certifications at issue.

## II.   Compliance with the Court's Order for Discovery & Inspection

On September 4, 2013, this Court entered the Discovery Order, a copy of which is appended hereto as Exhibit B.  The Court's Discovery Order directed that the "United States shall pre-mark all exhibits that it intends to introduce as part of its case-in-chief and shall permit defense counsel to inspect and copy such exhibits thirty (30) days prior to trial."  Discovery Order ¶ 6.  In this case, the Government has turned over to the defense copies of, and, with respect to physical exhibits, made available for inspection, most, if not all, of the exhibits that it intends to use at trial in its case-in-chief.

With respect to "authenticity" objections, the Discovery Order provides: "The authenticity of all exhibits disclosed to and examined by counsel pursuant to the provisions of paragraph 6 of this Order shall be deemed to have been accepted by either the defendant or the United States unless counsel files with the Court, fourteen (14) days prior to the date of trial, a notice that the authenticity of one of more exhibits will be contested at trial, together with a statement delineating why the authenticity of the exhibit is being challenged together with a certification that the challenge to authenticity is being made in good faith."  Discovery Order ¶ 7.

With respect to "chain of custody" objections, the Discovery Order provides: "When counsel has examined an exhibit disclosed prior to trial pursuant to the provisions of paragraph 6 of this Order, the chain of possession of the exhibit will be deemed to have been accepted by either the defendant or the United States unless counsel files with the Court, fourteen (14) days prior to the date of trial, a notice that the chain of possession of the exhibit will be contested at trial, together and a certification that the challenge to authenticity is being made in good faith."  Discovery Order ¶ 8.

On January 13, 2015, the undersigned Assistant U.S. Attorney wrote a letter to defense counsel requesting that the defense comply with paragraphs 7 and 8 of the Discovery Order.  On January 28, 2015, the defense advised the Government in writing that, absent new information, it does not have any "authenticity" or "chain of possession" objections.

The Government therefore requests an *in limine* ruling that any Government exhibits that were turned over or made available for inspection at least 30 days prior to trial will not be barred under the authenticity or chain-of-custody rules unless the defense complies with the procedure set forth in the Court's Discovery Order.

## III.   Admission of Defendant's Prior Convictions During Cross-Examination

The defendant was convicted in Union County Superior Court, on August 6, 2003, for distribution of a controlled dangerous substance, distribution of heroin/cocaine, and possession of a controlled dangerous substance. On September 12, 2003, he was sentenced to 16 years in New Jersey state prison with a parole ineligibility date of 7 years (the "September 2003 Conviction").[2] According to his criminal history report, the defendant was paroled on or about January 4, 2010, in relation to the September 2003 Conviction.

On November 9, 1999, the defendant was also convicted in Union County Superior Court of distribution of a controlled dangerous substance on school property (the "November 1999 Conviction"). On January 14, 2000, he was sentenced to 3 years in New Jersey state prison.[3]

If the defendant takes the witness stand at trial, the Government seeks to impeach him, under Rule 609, with both of these prior convictions.

### A.   Rule 609

Evidence of prior convictions is admissible under Rule 609(a)(1) to attack the credibility of the defendant should he elect to testify. Rule 609(a)(1) provides that

---

[2] Information regarding the felonies discussed herein has been derived from a criminal history report for the defendant. The Government is in the process of obtaining certified judgments of conviction. The Government will make these documents available prior to requesting that the Court rule on this motion.

[3] In addition to these two felonies, the defendant was convicted in Union County Superior Court, on April 25, 1994, for distribution of heroin/cocaine, and he was sentenced to 10 years in state prison. On October 5, 1990, the defendant was convicted in Union County Superior Court for distribution of cocaine, and he was sentenced to 4 years in state prison. On January 30, 1981, the defendant was convicted in Union County Superior Court for distribution of opium or derivative, and he was sentenced to 5 years in state prison. At this time, the Government does not seek to impeach the defendant with these convictions.

> [f]or the purpose of attacking the character for truthfulness of a witness, . . . evidence that an accused has been convicted of [a crime punishable by death or imprisonment in excess of one year under the law under which the witness was convicted] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused.

Evidence of a prior conviction can be admitted solely for the purpose of assailing the defendant's credibility. *See Gov't of the Virgin Islands v. Bedford*, 671 F.2d 758, 761 (3d Cir. 1982).

The Government bears the burden of persuasion, and these burdens differ depending upon the age of the conviction. *See* Fed. R. Evid. 609(b). "[I]f a period of more than ten years has elapsed since the date of conviction or of the release of the witness from the confinement imposed for that conviction, *whichever is the later date,* then the conviction is not admissible unless the Court finds that the probative value of the conviction substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b) (emphasis supplied). If the conviction is less than ten years old, as calculated under Rule 609(b), then the conviction is admissible if the court determines that the probative value "outweighs" its prejudicial effect.

As demonstrated below, the Government meets its burden of persuasion with respect to both of these convictions, and their use is therefore proper.

### B.    Defendant's August 2003 Conviction

The defendant's August 2003 Conviction is not more than 10 years old as calculated in Rule 609(b). As a result of the August 2003 Conviction, the defendant was sentenced to 16 years in New Jersey state prison with a parole ineligibility date of 7 years. Consistent with that sentence, and based on his criminal history, the defendant was not paroled from confinement for that offense until January 2010. Therefore, the Government's burden is to demonstrate that the probative value of the conviction "outweighs" any prejudice to the defendant. *See Bedford*, 671 F.2d at 761.

The Third Circuit has recognized that, "[w]hen a defendant chooses to testify at his trial he places his credibility 'directly at issue.'" *United States v. Murphy*, 172 Fed. App'x 461, 462-63 (3d Cir. 2006) (quoting *United States v. Beros*, 833 F.2d 455, 463-64 (3d Cir. 1987)). In considering the probative value of a conviction, the Third Circuit has enumerated four factors that

district courts should consider: "(1) the kind of conviction; (2) when the conviction occurred; (3) the importance of the witness' testimony; (4) the importance of the credibility of the defendant." *Id.* at 463 (citing *Bedford*, 671 F.2d at 761 n.4).

The August 2003 Conviction is highly probative of the defendant's credibility. Numerous courts, including the Third Circuit, have held that drug distribution convictions are probative of a defendant's credibility. *See United States v. Gatson*, 509 Fed. App'x 158, 160 (3d Cir. 2013) ("[W]e agree with the District Court that Gatson's prior drug convictions were probative of his credibility."); *United States v. Jenkins*, Crim. No. 08-1384, 2003 WL 21047761, at *2 (S.D.N.Y. May 8, 2003) ("The Second Circuit has stated that evidence of a witness's prior narcotics conviction is highly probative on the issue of a witness's credibility." (citing *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977)).

As one court has put it, "a narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie." *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977). In fact, "even the probative value of earlier drug convictions has been found to be sufficient in the face of countervailing potential prejudice where the defendant is on trial for narcotics charges." *United States v. Sanders*, Crim. No. 06-173, 2006 WL 3531462, at *2 (E.D. Pa. Nov. 30, 2006).

Here, in comparison to the high probative value of the August 2003 Conviction, the prejudicial effect of its admission is less because the defendant is not on trial for a narcotics offense. *Cf. Jenkins*, 2003 WL 21047761, at *2 ("[T]he narcotics conviction is not similar to the felon in possession charge that Mr. Jenkins faces here."). Further, any prejudice from the introduction of the August 2003 Conviction can be ameliorated by an instruction directing the jury that the prior conviction is "not to be considered for any purpose other than assessing [the defendant's] credibility." *Gatson*, 509 Fed. App'x at 161.

Although the August 2003 Conviction occurred over ten years ago, it is squarely within the time period contemplated by Rule 609(b) because the defendant was released from confinement in 2010.

The third and fourth factors also weigh in favor of the admissibility of the August 2003 Conviction. If the defendant testifies, he will deny the charges against him and ask the jury to believe his version of the facts. The defendant's testimony will address the key disputed issue in the case, namely, whether he was the individual who committed the seven armed robberies. Accordingly, the defendant's credibility will be of great importance, and the

Government should be permitted to attack that credibility with the defendant's prior convictions. *See United States v. Givens*, 767 F.2d 574, 580 (9th Cir.), *cert. denied*, 474 U.S. 953 (1985) (holding that Government could confront defendant with his convictions of robbery, attempted robbery, and assault with a deadly weapon on police officer). Indeed, where a defendant testifies, his credibility is of paramount importance and "the government should not be prevented from providing the jury with information which undercuts the defendant's trustworthiness as a witness." *United States v. Browne*, 829 F.2d 760, 763 (9th Cir. 1987).

Thus, the Government should be permitted to use the August 2003 Conviction because it will not unduly prejudice the defendant, but rather, provide the jury with a more complete picture of the defendant's character for truthfulness.

### C.   **Defendant's November 1999 Conviction**

With regard to the November 1999 Conviction, the Government must demonstrate that the "probative value of the conviction is supported by specific facts and circumstances" that "substantially outweigh its prejudicial effect." Fed. R. Evid. 609(b). Although Congress stated that convictions over ten years old should be admitted "very rarely and in exceptional circumstances," *Zinman v. Black & Decker*, 983 F.2d 431, 434 (2d Cir. 1993) (citation omitted), relevant case law demonstrates that this is such a case.

A defendant with an extremely lengthy criminal record—such as the defendant here—"is in a poor position to claim entitlement to the presumption that the probative value of prior convictions decreases over time." *United States v. Holmes*, 822 F.2d 802, 805 (8th Cir. 1987) (affirming the admission of four felony convictions each more than ten years old, and noting that the probative value of convictions older than ten years is "substantially increased by the number and frequency of [defendant's] felony convictions in the ten-year period immediately preceding his last incarceration"); *cf.* Victor James Gold, Federal Practice & Procedure § 6134 (2014) ("Thus, where the witness has maintained a spotless record during that period, probative value of the conviction is diminished. . . . [In contrast], if the witness has multiple convictions, the probative value of an older conviction arguably is not diminished by the passage of time since the witness has continued to engage in criminal conduct, suggesting his character has not improved.").

Here, the defendant's successive convictions for drug dealing make his older convictions more relevant, as evidence of the defendant's character for truthfulness. *See United States v. Lipscomb*, 702 F.2d 1049, 1071 (D.C. Cir. 1983) (holding that a "subsequent conviction enhance[d] the probativeness of

[an] earlier robbery conviction because it shows that the robbery was not merely an isolated criminal episode from which [the defendant] ha[d] since been rehabilitated"); *United States v. Coleman*, Crim. No. 05-295, 2006 WL 3208677, at *3 (E.D. Pa. Nov. 2, 2006). The August 2003 Conviction therefore enhances the probative value of the November 1999 Conviction. Indeed, exclusion of the November 1999 Conviction would leave the jury with a skewed picture of the defendant's character for truthfulness.

If the defendant takes the stand in this case, his credibility will be of paramount importance to the jury. Convictions older than ten years have been admitted where the jury's assessment of a defendant's credibility is highly relevant to disputed issues in the case. In *United States v. Brown*, 956 F.2d 782 (8th Cir. 1992), the defendant was accused of conspiracy to possess with intent to distribute cocaine and marijuana and interstate travel in aid of racketeering. The defendant took the stand in his own defense and denied involvement or knowledge of the criminal activities described by the Government's witnesses. *Id.* at 785. Prior to trial, the defendant unsuccessfully sought to preclude the Government from impeaching him with evidence of a two-year-old conviction for cocaine possession and a sixteen-year-old conviction for distribution of marijuana. *See id.* at 787. Although the defendant testified on direct examination about these two convictions, the Government was also permitted to impeach him with evidence of a 21-year-old conviction for burglary. *See id.* Holding that the district court could reasonably find that the probative value of the burglary conviction substantially outweighed its prejudicial effect, the Court of Appeals affirmed the district court, noting that the jury "had to choose between one version of events presented by the government's witnesses and another version presented by the defendant." *Id.* In light of the fact that the credibility of witnesses was a "critical factor" for the jury, the court held that the burglary conviction was highly probative as impeachment evidence. *See id.*

For all of these reasons, the Government submits that the probative value of the defendant's November 1999 Conviction "substantially outweighs" any prejudice to the defendant. Similarly, the probative value of the defendant's August 2003 conviction "outweighs" its prejudicial effect. Accordingly, both convictions should be admissible should the defendant take the witness stand in his own defense.

## IV.    Alibi Notice

On January 13, 2015, the Government requested in writing that the defense provide notice, within the 14-day deadline set forth in the rules, of any intention to offer an alibi defense. *See* Fed. R. Crim. P. 12.1(a)(1). As required

by Rule 12.1(a)(1), the Government's written request specified the "time, date, and place" of each alleged offense.

Within 14 days after receiving such a request, a defendant is obligated, under Rule 12.1(a)(2), to "serve written notice on an attorney for the government of any intended alibi defense" and that notice must also state (A) "each specific place where the defendant claims to have been at the time of the alleged offense," and (B) the "name, address, and telephone number of each alibi witness on whom the defendant intends to rely."

The defense has not provided any notice with respect to its intention to offer an alibi defense, or disclosed the names of any alibi witnesses.

The Government therefore requests, pursuant to Rule 12.1(e), that the court "exclude the testimony of any undisclosed witness regarding the defendant's alibi."

Thank you very much for your consideration.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney

By: 

OSMAR J. BENVENUTO
COURTNEY M. OLIVA
Assistant United States Attorneys

cc:   Peter Carter, Esq. (via electronic mail)
      Counsel for defendant Claude Williams

10

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA     :
                                :     Crim. No. 13-548 (KM)
    v.                         :
                                :
CLAUDE WILLIAMS           :     CERTIFICATION OF
                                :     CUSTODIAN OF RECORDS
                                :

I, _Hillary Rapson_ , being duly sworn upon my oath, hereby state the following:

1.     I submit this certification pursuant to Rules 803(6) and 902(11) of the Federal Rules of Evidence.

2.     I am employed as _Assistant Trial Coordinator_ [TITLE OR CAPACITY], by _Sprint_

    (hereinafter the "Business") in _Overland Park_ [CITY] _KS_ [STATE].

3.     I am personally familiar with the record-keeping practices and procedures of the Business. Accordingly, I am a "custodian or other qualified person" as those terms are used in Rules 803(6) and 902(11).

4.     The Business has been directed by court order to provide (A) subscriber information, call-detail records, and cell-site records for telephone number (908) 448-3855; (B) call-detail records and cell-site records for telephone number (908) 397-5258; (C) call-detail records and cell-site records for telephone number (908) 444-2894; (D) call-detail records and cell-site records for telephone number (908) 397-3874; and (E) subscriber information for telephone numbers (908) 397-3874, (908) 397-5258, and (908) 444-2894.

5.     After a diligent and thorough search, the Business has produced any and all information concerning these records.

6.     The exhibits marked for identification as (A) Government Exhibits 601A and 601B; (B) Government Exhibit 603; (C) Government Exhibit 604; (D) Government Exhibit 605A; and (E) Government Exhibit 605B contain records of the Business (the "Records") produced pursuant to court order in this case.

1



GOVERNMENT
EXHIBIT

Sprint-Cert

7.   The attached Records consist of reports, records, and data compilations of acts and events made at or near the time by, or from information transmitted by, a person with knowledge; the reports, records, and data compilations are kept in the course of the Business's regularly-conducted business activity; and it is the regular practice of the Business's business activity to make the reports, records, and data compilations. Accordingly, the Records are "Records of regularly conducted activity" as that term is used in Rule 803(6).

8.   As required by Rule 902(11), I certify that the Records were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters.

9.   As required by Rule 902(11), I certify that the Records are kept in the course of regularly-conducted activity of the Business.

10.  As required by Rule 902(11), I certify that the Records were made as regularly-conducted activity as a regular practice of the Business.

I hereby declare, under penalty of perjury, that the foregoing is correct and true.

_____
[SIGNATURE]

_____
[NAME]

_____
[TITLE]

Sworn to and subscribed
before me this 5th
day of September , 2014.

_____
Notary Public
State of ___Kansas___

NOTARY PUBLIC-State of Kansas
HEATHER A P____
My Appt Expires 6-29-15

2

# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA        :
                                        Criminal No. 2:13cr548(KM)
        v.                      :
                                        ORDER FOR DISCOVERY
CLAUDE WILLIAMS                 :        AND INSPECTION

        Defendant(s)    :

    In order to eliminate unnecessary motions for discovery in
this case, to eliminate delays in the presentation of evidence
and the examination of witnesses, and to expedite the trial
pursuant to the provisions of the Speedy Trial Act of 1974,

    IT IS ORDERED:

    1. Conference.  Within ten (10) days from the date hereof
the attorneys representing the United States and the defendant
shall meet or confer to seek to resolve any discovery issues
prior to the filing of motions, and the United States shall
permit the defendant to inspect, and shall permit defendant to
photograph or copy, or shall furnish a photograph or copy of:

        (a) All statements of the defendant required to be produced
            under Rule 16(a)(1)(A),(B) or (C), Fed. R. Crim. P.

        (b) Defendant's prior criminal record as required by
            Rule 16(a)(1)(D), Fed. R. Crim. P.

        (c) All documents and tangible objects required to be
            produced under Rule 16(a)(1)(E), Fed. R. Crim. P.

        (d) All reports of examinations and tests required to be
            produced under Rule 16(a)(1)(F), Fed. R. Crim. P.

        (e) All summaries of expert witnesses' testimony,
            required to be produced under Rule 16(a)(1)(G), Fed.
            R. Crim. P. The summaries provided shall describe the
            witnesses' opinions, the bases and reasons therefore,
            and the witnesses' qualifications.

        (f) Any material evidence favorable to the defense related

to issues of guilt, lack of guilt or punishment which is known or that by the exercise of due diligence may become known to the attorney for the United States, within the purview of <u>Brady v. Maryland</u> and its progeny.

(g) If there is more than one defendant named in the indictment, and if the United States intends to introduce into evidence in its case-in-chief a confession made to law enforcement authorities by one defendant which names or makes mention of a co-defendant, then the United States must make a copy of that statement or confession available to counsel for the non-declarant defendant, along with a proposal for its redaction to conform with the requirements of <u>Bruton v. United States</u>.  If the government makes no such disclosure and turnover within the time period allowed, the confession may not be received at a joint trial of the declarant and non-declarant defendants. If, within ten (10) days after receipt of the confession and its redacted version, counsel for the non-declarant defendant makes no objection to the redacted statement, the defendant will be deemed to have acceded to the receipt of the redacted statement into evidence.

(h) A defendant who receives discovery pursuant to this Order shall be deemed to have requested such disclosure for the purpose of triggering defendant's reciprocal discovery obligations under Rule 16(b), Fed. R. Crim. P.  The defendant shall have ten (10) days from its receipt of discovery from the United States to produce its reciprocal discovery.

(i) Any defendant intending to offer a defense of alibi or insanity or mental condition shall comply with the requirements of Rules 12.1 and 12.2, Fed. R. Crim. P.

2.  **Disclosure Declined.**  If, in the judgment of the United States Attorney, in order to protect the identity of a confidential informant or undercover agent, to prevent interference with an ongoing investigation, to protect the integrity of the criminal proceeding, or to otherwise serve the interests of justice, any disclosure set forth in paragraph 1 hereof should not be made, disclosure may be declined, and defense counsel advised in writing of the declination within five (5) days of the conference.

A defendant who seeks to challenge the declination may move the Court for relief in the following manner:

    (a) No later than ten (10) days from the time that the government declines, the defendant shall file a motion for discovery or inspection.

    (b) The motion shall conform to the schedule set forth in paragraph 12 of this Order, unless otherwise ordered by the Court.

    (c) The motion shall set forth: (1) the statement that the prescribed conference was held; (2) the date of the conference; (3) the name of the attorney for the United States with whom the conference was held; (4) the matters which were agreed upon; and (5) the matters which are in dispute and which require the determination of the Court.

    (d) In responding to any such motion, the United States must show good cause for the declination of discovery, and in doing so may invoke the provisions of Fed. R. Crim. P. 16(d)(1).

3. **Rule 404(b) Evidence**. The United States shall provide notice to the defense of all evidence it intends to offer of other crimes, wrongs or acts within the meaning of Rule 404(b) of the Federal Rules of Evidence, not less than ten (10) calendar days prior to the date of trial, except that for good cause shown, the Court may excuse such pretrial notice.

4. **Jencks and Giglio Material**. The United States agrees to produce all statements within the meaning of the Jencks Act, 18 U.S.C. § 3500, and impeachment evidence within the meaning of Giglio v. United States, 405 U.S. 150 (1972), sufficiently in advance of the witness's testimony to avoid delay in the trial. Similarly, the defense shall produce "reverse Jencks" statements sufficiently in advance of the witness's testimony to avoid delay in the trial.

5. **Continuing Duty**. Any duty of disclosure and discovery set forth herein is a continuing one and the attorneys for all parties shall produce any additional discoverable information.

6. **Exhibits**. The United States shall pre-mark all exhibits that it intends to introduce as part of its case-in-chief and shall permit defense counsel to inspect and copy such exhibits

thirty (30) days prior to trial. A set of such pre-marked
exhibits with an exhibit list shall be given to the trial
judge's deputy clerk no later than the first day of trial. The
defendant's exhibits shall also be pre-marked and, unless
otherwise ordered by the Court upon the defendant's application,
shall be disclosed to the United States within seven (7) days
after the United States' disclosure.  Defense counsel, in an
appropriate case, may apply to the Court for an order requiring
the United States to pre-mark exhibits more than thirty (30)
days in advance of trial.   The United States and the defense
shall also pre-mark all Jencks Act materials and "reverse
Jencks" pursuant to Rule 26.2, Fed. R. Crim. P., so that no
trial delay is encountered.

      7. **Authenticity of Exhibits**.  The authenticity of all
exhibits disclosed to and examined by counsel pursuant to the
provisions of paragraph 6 of this Order shall be deemed to have
been accepted by either the defendant or the United States
unless counsel files with the Court, fourteen (14) days prior to
the date of trial, a notice that the authenticity of one or more
exhibits will be contested at trial, together with a statement
delineating why the authenticity of the exhibit is being
challenged together with a certification that the challenge to
authenticity is being made in good faith.

      8.  **Chain of Possession**.  When counsel has examined an exhibit
disclosed prior to trial pursuant to the provisions of paragraph 6 of
this Order, the chain of possession of the exhibit will be deemed to
have been accepted by either the defendant or the United States
unless counsel files with the Court fourteen (14) days prior to the
date of trial, a notice that the chain of possession of the exhibit
will be contested at trial together with a statement delineating that
the chain of possession of the exhibit is being challenged and a
certification that the challenge to the chain of possession is being
made in good faith.

      9. **Scientific Analysis**.  When any party has disclosed the
scientific analysis of an exhibit proposed to be introduced at
trial by that party, which analysis has been determined by an
expert in the field of science involved, then the scientific
analysis of the exhibit will be deemed admitted unless
counsel for a party receiving the disclosure files with the
Court, fourteen (14) days prior to trial, a notice that the
scientific analysis of the exhibit will be contested.

      10.   **Other Motions by Defendant**.  Motions regarding
defenses or objections permitted pursuant to Rules 12 and 41(g),
Fed. R. Crim. P., including, _inter alia_, motions for suppression

of evidence, shall be made within thirty (30) days from the date
hereof unless good cause for delay is shown.

11.  **Translations**.  In the event that the United States
intends to utilize translations of any conversations, copies or
transcripts of such translations shall be produced for defense
counsel no later than thirty (30) days prior to the date of
trial.  The correctness of any such translation or transcript
will be deemed admitted, unless defense counsel serves and files
with the Court, fourteen (14) days prior to the date of trial, a
notice that counsel objects to the translation or transcript,
specifying the portions thereof to which objection is made and
counsel's contentions as to the correct translation.

12.  **Motions.**  In multi defendant cases, each defendant
shall file his/her own motions.  A letter asking the court to
join in co-defendants motions will not be addressed.  All
pretrial motions not otherwise specifically provided for in this
or other Orders of the Court in this case will be deemed waived
unless they are filed and served not later than:

| | |
|---|---|
| Motions due: | 09/16/13 |
| Opposition due: | 09/30/13 |
| Reply due: | 10/07/13 |
| Motions hearing date: | 10/15/13 at 10:00 |
| Trial date: | 10/21/13 at 09:30 |

13. **Instructions and Voir Dire.**  Counsel shall furnish to
the Court, five (5) days prior to the date of trial, an agreed
upon statement summarizing the case, requests to charge and
proposed voir dire questions.

Hon. Kevin McNulty
U.S. District Judge

Dated: 09/04/13

DNJ Order for Discovery Inspection-4/03